Cohn v. Norton.

<---●●●--->

LOUIS COHN *vs.* SAMUEL L. NORTON.

New Haven Co., June T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The rule of damages for the breach of a contract is—(1) the damages that would arise naturally and generally from such a breach of contract; or (2) if the special circumstances under which the contract was made were stated at the time and known to both parties, then the amount of injury which would ordinarily follow from a breach of the contract under those special circumstances.     ....

There may however be cases in which, from the nature of the transaction or the character of the business in which the party is engaged, a promise may be implied to use the utmost diligence in the performance of the duty undertaken. In such cases the law will not require that the party be specially informed, but will deem him to have contemplated the importance of the business and hold him responsible accordingly.

Profits that are lost by a breach of contract are in some cases recoverable where they are definite and certain, but otherwise where they are not.

The defendant made a lease to the plaintiff of a store, then occupied by another tenant under an unexpired lease covering a part of the time for which the place was leased to the plaintiff, and the occupant refused to give up possession. In a suit against the lessor for damages, it was held—

1. That it was not the duty of the plaintiff at his own expense to take measures to gain possession.

2. That the defendant was liable to more than nominal damages.

3. That the plaintiff was entitled to recover certain rent paid in advance, the difference between the rent agreed to be paid and the value of the term, and such special damages as, under the rule above stated, he might show that he was, in the circumstances, entitled to.

4. That such expenses as the plaintiff had incurred in preparing to occupy the premises, after he had been informed that the tenant in possession refused to surrender them, were incurred in bad faith, and could not be recovered; and that they could not be recovered in any case if they were unreasonable.

[Argued June 13th—decided September 13th, 1889.]

ACTION for damages for the breach of a contract to deliver to the plaintiff the possession of certain premises leased to him by the defendant; brought to the Court of Common Pleas in New Haven County, and tried to the court before *Deming, J.* The following facts were found by the court:

On and prior to the 18th day of August, 1888, the plaintiff Cohn was at work as a foreman in the clothing establishment of M. & L. Cohn, in the city of New York, and was receiving $35 a week for his services.

On that day he made a written contract with Norton, the defendant, who resides in the city of Meriden in this state, by which Norton leased to Cohn a certain dwelling house and store in Meriden, and agreed to give possession on the first day of September, 1888.

The lease described the premises as " a certain dwelling house and store of the lessor in Meriden, to be used for the purpose of a clothing and men's furnishing store, for one year from September 1st, 1888, at a monthly rent of fifty dollars." It also provided that the lessee should have the privilege of renewal on the same terms for three years.

At the time of executing the lease one Alexander was occupying the store, but Cohn was not informed that he had a lease of the store, and did not in fact know that he had any right in or claim to the store at the time he accepted the lease.

It appears however, and the court finds as a fact, that Norton, on the 31st day of January, 1885, leased the same store to Alexander, by a written lease duly signed and wit-

nessed; that Alexander entered into possession of the store and had occupied it ever since and was occupying it under the lease on the 18th day of August, 1888, at the time the lease was made and executed to Cohn. The lease to Alexander was for one year, but he had held over since the expiration of the year, paying the rent; the lease providing that he might have four additional years upon a monthly hiring and the same monthly rent.

Immediately after the lease to Cohn was signed and delivered, he proceeded to New York and hired clerks to work for him in his store in Meriden, and agreed with them for their salary, and that they should commence work on the first day of September, 1888. He also hired a person to purchase goods for him, and to assist in purchasing goods, and with the buyer so hired commenced to purchase goods to be delivered in Meriden on the first day of September, 1888. The plaintiff purchased goods for the store to the amount of $6,942.34.

On August 24th the plaintiff received a letter from Norton, in which the latter informed him that Alexander claimed the right to keep possession under his lease and expressed his great disappointment at not being able to deliver possession at the time agreed. Some further correspondence took place between the parties, Norton writing on the 26th of August that he was doing all he could to arrange the matter, and Cohn writing him on the 27th of August : " As I am now situated I am on the fence, it being high time for me to buy goods and I don't know what to do about it. Please give me some definite information by return of mail." But it was not till the last day of September, 1888, that the defendant told the plaintiff absolutely that Alexander refused to leave and that he could not have the store. At the time the plaintiff took the lease he paid the defendant one month's rent in advance, for the month of September, amounting to $50, and the last of September tendered the defendant a further sum of $50, for the rent in advance for the month of October. The defendant refused

to accept the rent for the month of October, and offered to return the $50 paid for the rent for September.

At an interview between them near the end of September, the defendant said to the plaintiff that he would see if he could buy Alexander off, and the defendant replied "If you are going to pay damages to any one, you had better pay them to me, for my disappointment and loss." The defendant claimed from this conversation that the court ought to find that he had acted in good faith, and that the plaintiff was prevented from taking possession of the store by the refusal of Alexander to quit possession. But the court found that the defendant made no effort at any time or in any way to secure possession of the store; that neither before nor after giving the lease to the plaintiff did the defendant see or attempt to see Alexander; that he was not prevented by the plaintiff from making any arrangement with Alexander he thought best for his interests, to gain possession of the store, in any other way than the statement of the plaintiff that if he was to pay damage to any one it should be to him, the plaintiff; that the defendant caused the plaintiff to believe he could have the store at an early day, and did not tell him he could not have it until about the first of October.

Upon the trial the defendant further claimed that to entitle the plaintiff to recover substantial damages he must first show that he had made diligent effort to find another suitable store and had failed to find one. At the time the plaintiff hired the store he had but little money of his own. His brother, M. L. Cohn, a merchant of New York, guaranteed the payment of the rent, and also agreed to become security for the payment of the goods which the plaintiff bought.

The plaintiff at the time of taking the lease was unmarried, but had contracted to marry about the middle of September. An important element which led to the taking of the lease was a suite of rooms over the store, which were leased to the plaintiff with the store, and which he intended to use as a dwelling house. It was important that the plaintiff should have a store situated as this one was, with rooms

available for a tenement over it, so that he might be near his business, and so that his wife might manage his business for him in his absence; and it was further necessary to find a store satisfactory in rent and location to M. L. Cohn, his brother, who was to furnish the capital and guarantee the payment for the goods. The defendant proved that there were in the city of Meriden eight stores vacant at different times after the first of September. Some of these stores were examined by the plaintiff and his brother, and some of them were not known to them. The plaintiff also examined stores in several cities and towns of adjacent states, but did not find any store which would accommodate himself and his family, and which was satisfactory in rent and in location to himself and his brother, until about the 1st of January, 1889, when they found a store in the city of New Haven which could be leased from May 1st, 1889, and which they did lease from and after that date.

In looking for a store in Meriden the plaintiff searched carefully for vacant stores, and saw the owner of one or more stores which he learned were to rent, and in company with his brother, M. L. Cohn, and a friend who became afterwards his father-in-law, looked for and examined stores in Meriden, but did not inquire for stores of any real estate agent in the city.

The defendant thereupon claimed that the plaintiff had not used reasonable diligence to procure another store; but the court found that the plaintiff had used reasonable and great effort to find another store which was suitable for himself and family, and suitable and proper for his business and means, but that he was unable to find such a store until he secured the one mentioned.

At the time the defendant informed the plaintiff that he could not have the store, the former had on hand about $6,900 worth of goods, which he had purchased for the fall trade, expecting, according to his lease, to place them in the store on the first day of September. These goods were rapidly depreciating in value; the plaintiff had no store nor place to expose them for sale, and could not sell

them at wholesale, although he tried to do so. He thereupon made an arrangement with the parties from whom he had originally purchased them to take them back upon the payment of a certain sum for loss, damage and depreciation in value. The plaintiff was also obliged to pay a further sum of money to be released from contracts he had made with clerks employed by him between the 18th and 24th of August. The plaintiff claimed upon the evidence that he was entitled to damages as follows: 1st. For violation of contract, in not delivering to him possession of the store on September 1st, 1888, as agreed. 2d. For amount paid to clerks for release from contracts. 3d. For amount paid merchants to take back goods bought and for depreciation on the goods. 4th. For expenses while trying to find another store. 5th. For the loss of time at $35 per week from the 1st day of September until the trial of the cause.

The defendant objected to the introduction of all evidence upon any of these claims, but the court admitted the evidence upon them all, and the defendant duly excepted.

In deciding the cause the court struck out all the evidence relative to the first, fourth and fifth claims, and disallowed the claims, and rendered judgment for the plaintiff to recover as follows : For rent paid to the defendant in advance, $50 ; for cash paid clerks to secure release of contract, $80 ; for cash paid merchants for return of goods and depreciation in their value, $586.35; and rendered judgment for the plaintiff to recover from the defendant $716.35 damages and the costs of suit. The defendant appealed to this court.

· *G. A. Fay,* for the appellant.

1. The defendant having acted in good faith in making the lease to the plaintiff, and being unable to deliver possession simply because the tenant in possession held over and refused to surrender the premises, and there being no covenant for quiet possession or enjoyment, he was under no obligation to put the plaintiff into possession, and the remedy of the latter was solely against the tenant holding over.

*Gano* v. *Vanderveer*, 34 N. Jer. Law, 293; *Gardiner* v. *Keteltas*, 3 Hill, 330; *Trull* v. *Granger*, 8 N. York, 115, 119; *McAlpin* v. *Woodruff*, 11 Ohio St., 120; *Baugher* v. *Wilkins*, 16 Maryl., 35; *Sigmund* v. *Howard Bank*, 29 id., 324; *Hamilton* v. *Cutts*, 4 Mass., 349; *Dudley* v. *Folliott*, 3 T. R., 584; Platt on Cov., 314; Taylor's Land. & Tenant, §§ 308, 312; Rawle on Cov. for Title, 194.

2. If we are wrong in this, yet the plaintiff is entitled to nominal damages only, the defendant having acted in good faith. *McClowry* v. *Crogan*, 31 Penn. St., 22; *McNair* v. *Compton*, 35 id., 23; *Baldwin* v. *Munn*, 2 Wend., 400; *Kelley* v. *Dutch Church of Schenectady*, 2 Hill, 116; *Cockcroft* v. *N. York & Harlem R. R. Co.*, 69 N. York, 203; *Flureau* v. *Thornhill*, 2 W. Bla., 1078.

3. If more than nominal damages can be recovered then the correct rule of damages is, the difference between the yearly value of the premises and the rent under the lease. Sedgw. on Dam., (4th ed.,) 215, *note;* Rawle on Cov. for Title, 255; Taylor's Land. & Ten., § 317; *Trull* v. *Granger*, 8 N. York, 119; *Hardy* v. *Nelson*, 27 Maine, 525. Remote and uncertain damage cannot be recovered. 2 Greenl. Ev., § 256; 5 Am. & Eng. Encyclopedia of Law, 15; Sedgw. on Dam., (4th ed.,) 80 and note, 125; *Fox* v. *Harding*, 7 Cush., 522; *Goddard* v. *Barnard*, 16 Gray, 207; *Kelley* v. *Dutch Church of Schenectady*, 2 Hill, 116; *Masterton* v. *Mayor &c., of Brooklyn*, 7 id., 72; *Bitner* v. *Brough*, 11 Penn. St., 127; *Hertzog* v. *Hertzog*, 34 id., 418; *Hadley* v. *Baxendale*, 9 Exch., 341; *Portman* v. *Middleton*, 4 Com. Bench, N. S., 322; *Vicars* v. *Wilcox*, 2 Smith Lead. Cas., 465. The damages claimed for loss in settling for goods bought, and with clerks hired, are too remote. *Williams* v. *Oliphant*, 3 Ind., 271; *Hughes* v. *Hood*, 50 Misso., 350; *Moreland* v. *Metz*, 24 W. Virg., 119, 141; *Robrecht* v. *Marling*, 29 id., 765, 770; *Peters* v. *McKeon*, 4 Denio, 546; *Bender* v. *Fromberger*, 4 Dallas, 441; *Dimmick* v. *Lockwood*, 10 Wend., 142; *Greene* v. *Tollman*, 20 N. York, 195; *Woodbury* v. *Jones*, 44 N. Hamp., 206; *Goodwin* v. *Francis*, L. R., 5 Com. Pleas, 295; *Pounsett* v. *Fuller*, 8 J. Scott, 660; *Hodges* v. *Earl of Litchfield*,

1 Bing. N. C., 492; Hilliard on Vendors, 109; Rawle on Cov. for Titles, 295.

*R. S. Pickett*, for the appellee.

The chief reasons of appeal shown by the record relate to the admission of evidence by the court below as to the character and amount of damage to the plaintiff, claimed to have resulted from the non-performance by the defendant of the conditions of the contract on his part to be performed, contained in the lease in question, the execution of which is clearly admitted by the defendant's answer. The lease, while meager in terms as to the liabilities and obligations of the lessor, and profuse as to the liabilities and obligations of the lessee, is, by the phrase " the said Norton has let and rented unto the said Cohn," to all legal intents and purposes a valid and binding obligation upon the defendant to put and maintain the plaintiff in quiet possession of the premises described in the lease. Wood's Landlord & Tenant, 562 to 564; *Eldred* v. *Leahy*, 31 Wis., 551; *Berrington* v. *Casey*, 78 Ill., 317, 319; *Coe* v. *Clay*, 5 Bing., 440.

The test question, as to the correctness of the rulings of the court upon the evidence offered for the plaintiff and admitted, as to the character and amount of damage, and the manner in which the plaintiff was injured by the defendant's breach of contract, seems to be, whether the party suffering from such breach has or has not a remedy at law. If he has no remedy the evidence is immaterial and irrelevant; if he has, it is his privilege and duty to show to the court by evidence the character and amount of his damage, the manner in which it arose, and its connection, if any, with the defendant's breach of contract.

The paramount principle of the law as to the measure of damages recoverable by an injured party from the party who commits the injury, by negligence, oversight, or mistake, by breach of contract or otherwise, without fraud or any evil intent, is, that the injured party shall receive compensation commensurate with such loss or damage as naturally and proximately results from the breach of contract or other

malfeasance or non-feasance, and no more.   1 Sutherland on Damages, 17, 18, 19, 79, 80, 131, 133 ; *Baker* v. *Drake*, 53 N. York, 211 ; *Woodbury* v. *Jones*, 44 N. Hamp., 206, 209, 210 ; *Steel* v. *Frick*, 56 Penn. St., 172, 174, 176 ; *Johnson* v. *Arnold*, 2 Cush., 46, 47 ; *Nurse* v. *Barnes*, T. Raym., 77.

As to special and consequential damages to a lessee by breach of contract by the lessor, see 3 Sutherland on Damages, 150, 158, 164; *Driggs* v. *Dwight*, 17 Wend., 71, 74 ; *Giles* v. *O'Toole*, 4 Barb., 261 ; *Adair* v. *Bogle*, 20 Iowa, 238, 243, 244; *Green* v. *Williams*, 45 Ill., 206, 208.

If, as appears, the law provides for a recovery of such damages as naturally and proximately result from a breach of contract, the prominent points in issue in an action for such recovery must of necessity be, as to the breach of contract, the amount of the resultant damage, the connection between such breach and such damage, and whether such damage is or is not the natural and proximate result of such breach.   Such issues cannot be presented to a court without evidence, and in this case the evidence objected to was pertinent to such issues, was material and relevant, and was properly admitted by the court.   *Cilley* v. *Hawkins*, 48 Ill., 308, 311 ; *Yeager* v. *Weaver*, 64 Penn. St., 425, 427 ; *Seyfert* v. *Bean*, 83 id., 450, 452 ; *Ward* v. *Smith*, 11 Price, 19.

The finding of facts, showing that the defendant executed the lease to the plaintiff while the premises were subject, until February 1st, 1890, to a prior lease, which last lease was duly executed by the defendant, discloses the gross carelessness and lack of good faith of the defendant in making a contract with the plaintiff which naturally would, and actually did, lead him to make extensive and important arrangements, and expend large sums of money, for the purpose of establishing the business contemplated, which was well known to the defendant, and mentioned in the lease.

The claim of the defendant that the suitability of other premises, for his business and family, that might have been hired by the plaintiff in Meriden, was not to be determined by himself, are not in accord with sound reason or good law.

1 Sutherland on Damages, 149, 155; 3 id., 165; *Miller* v. *Mariners' Church*, 7 Greenl., 51, 55.

CARPENTER, J. On the 18th day of August, 1885, the defendant leased to the plaintiff a store and dwelling house, for one year from the 1st day of September, with the privilege of renewing the lease for three years, at a monthly rent of $50, payable in advance. One month's rent was paid. The defendant failed to put the plaintiff in possession. It appears that when the lease was executed the property was in the possession of one Alexander, under a prior lease, with the right to hold the same until February 1st, 1890. He refused to surrender the possession.

In an action to recover damages the plaintiff claimed to recover the sum of $80, amount paid to clerks for release from contracts, and the sum of $586.35, amount paid merchants to take back goods bought, and for depreciation on the goods. The defendant objected to the introduction of all evidence upon either of these claims. The court admitted the evidence and allowed both items as damages.

Assuming that the plaintiff is correct in his claim that these were, or might have been, legitimate items of damage, still we think the testimony was objectionable, unless it further appeared that the sums paid were reasonable, and that the obligation to pay was entered into in good faith. The mere fact that the plaintiff paid them is not of itself sufficient to establish either proposition; and it does not appear that there was any other evidence tending to establish them or either of them. If the clerks employed by the plaintiff had sustained no damage, or damage to a less amount, or if the plaintiff was under no legal obligation to pay, then the payment was unreasonable. The same is true of the money paid to the merchants.

If these clerks were hired after he knew of the lease to Alexander, it can hardly be claimed that the plaintiff acted in good faith. How that was we are not told. It appears that he had full knowledge of that lease on the 23d of August; and it is consistent with every fact found that all the

clerks were subsequently hired. So too with respect to the purchase of the goods. Four days after the plaintiff had actual knowledge that Alexander could legally retain the possession, August 27th, he wrote the defendant as follows :—" As I am now situated I am on the fence, it being high time for me to buy goods, and I don't know what to do about it." On the same day he doubtless received the defendant's letter informing him that the prior lease had a year and five months longer to run. The evidence is strong, if not conclusive, that he purchased his goods after that. If so, in no event has he any legal or moral claim on the defendant.

But the great question is,—What is the rule of damages in cases like this ?

Before considering that question we will briefly notice another claim that the defendant sets up, and that is, that it was the duty of the plaintiff, at his own expense, to take measures to gain possession of the property. Whatever may be the rule when a stranger wrongfully takes and holds possession, the principle contended for can have no application where a person holding rightfully under the lessor retains the possession.

Nor are we prepared to sanction the claim that in this case the defendant is only liable for nominal damages. We can hardly say that a landlord who knows, or who has the means of knowing, that his property is incumbered with an outstanding lease, which may prevent his giving possession, acts in good faith in leasing unconditionally to another.

We come back then to the question what is the rule of damages ?

In *Hadley* v. *Baxendale*, 9 Exch., 341, the rule is laid down thus :—" Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should either such as may, fairly and reasonably, be considered as arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation

of both parties at the time they made the contract, as the probable result of the breach of it."

This rule has been criticised somewhat as not being sufficiently definite; but we apprehend that any difficulty of that sort has necessarily arisen from the difficulty in applying the rule in given cases. It is not an easy matter in many cases to determine whether a given result is the natural consequence of a breach of a contract, or whether it arose from a matter which may reasonably be supposed to have been contemplated when the parties entered into the contract. Oftentimes it is a question on which men's minds may well differ.

In that case the plaintiff was the owner of a steam mill. He sent the parts of a broken shaft by the defendant, a carrier, to a mechanic, to serve as a model for making a new one. The carrier did not deliver the article within a reasonable time, by reason of which the plaintiff's mill stood still several days. In an action to recover damages the defendant pleaded by paying £25 into court. The case went to trial, and the plaintiff had a verdict for £25 more. A rule to show cause was argued, and the court promulgated the rule we have quoted.

In that case it was contended that the loss of profits was the direct and natural consequence of the defendant's neglect. The court did not accept that view, but placed its decision on somewhat different grounds. The court says: "Now if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from a breach of such a contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under those special circumstances, so known and communicated. But on the other hand, if those special circumstances were wholly unknown to the party breaking the contract, he at the most could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not

affected by any special circumstances, from such a breach of contract. For had the special circumstances been known, the parties might have especially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them."

Thus the loss was attributed to the failure of the plaintiff to inform the defendant of the special circumstances, by reason of which he contributed to the loss. For if the defendant had been fully informed, it may be assumed that there would have been a prompt delivery, and consequently no unnecessary loss. And because he was not so informed the court held that he was not liable for special damages. The essence of the rule seems to be that the defendant must, in some measure, have contemplated the injury for which damages are claimed. If it was the direct and natural result of the breach of contract itself, he did contemplate it; but if the injury did not flow naturally from the breach, but the breach combined with special circumstances to produce it, then the defendant did not contemplate it, and consequently is not liable, unless he had knowledge of the special circumstances.

There may however be cases, growing out of the present methods of business, in which a promise may be implied from the nature of the transaction, or the character of the business in which the party is engaged, to be prompt, and to use the utmost diligence in the performance of the duty undertaken. In such cases the law will not require the party to be specially informed, but will deem him to have contemplated the importance of the business and hold him responsible accordingly.

Apply these principles to this case. The store was hired for a clothing store. That seems to be all that the defendant knew about it. He did not request the plaintiff to hire clerks and purchase goods, nor was he advised that the plaintiff would do so. While he may have supposed that the plaintiff would make suitable preparations to occupy the store, yet he could not know what preparations were necessary. He may have needed no clerks, or they may

have been previously engaged, and the necessary goods may have been then in his possession. As a matter of law it cannot be said that the defendant contemplated that the plaintiff would hire clerks and purchase goods under such circumstances as to incur heavy liabilities in case of failure for any cause. In no proper sense therefore was the defendant a party to those arrangements, had no interest therein, and had no right to interfere; consequently he cannot be held responsible.

Again, if these liabilities were incurred after the plaintiff knew that it was doubtful whether he could have the store, as they probably were, then, as suggested in a former part of this opinion, they were incurred in bad faith, and he assumed the entire risk.

The English rule then, as we understand it, will not justify the measure of damages applied by the court below.

The rule we have been considering prevails generally in this country. Closely allied to it is another principle which has some application to this case; and that is, that profits which are in their nature doubtful or uncertain, cannot be recovered as damages in such cases. But this principle does not exclude profits as such, but only those of a contingent nature. If they are definite and certain, and are lost by reason of the defendant's breach of his contract, they are in some cases recoverable. An instance of this is the case of *Booth* v. *The Spuyten Duyvil Rolling Mill Co.*, 60 N. York, 487. The plaintiff had contracted to deliver to a railroad company four hundred steel-capped rails at a given price. The defendant engaged with the plaintiff to manufacture them, but failed to do so. The plaintiff was allowed to recover the profits he would have made had he been able to deliver the rails. If a loss of profits may thus be compensated, we see no reason why a direct loss of money may not be compensated. In either event however the loss must be certain, not only as to its nature and extent, but also as to the cause which produced it, and must be capable of being definitely ascertained. In *Griffin* v. *Colver*, 16 N. York, 489, the rule is thus stated: "The broad general

rule in such cases is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions. The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation ; and they must be certain, both in their nature and *in respect to the cause from which they proceed.*" Here we may concede that the loss sustained was sufficiently definite and certain as to the amount, but not so as to the cause from which it proceeded. As we have already seen, it is not probable that the violation of the contract caused these losses ; but on the other hand the plaintiff himself needlessly subjected himself to them.

In an Illinois case, cited by the plaintiff, *Greene* v. *Williams*, 45 Ill., 206, it was held that necessary losses sustained might be recovered. The plaintiff's case will hardly stand that test. The failure is twofold—in respect to the necessity for hiring clerks, and purchasing goods in the first instance, and also in respect to the payment of the sums paid. There is no finding, and the facts do not sufficiently indicate, that there was any necessity for either.

Thus far we have assumed that the damages recoverable in this case are the same as in ordinary cases of breaches of contract. The defendant however contends that the rule in actions on covenants in leases, express or implied, is that where the plaintiff has paid no rent or other expense only nominal damages can be recovered. Such a rule once prevailed. It was adopted in analogy to actions on covenants in deeds of real estate, and it now prevails to a limited extent in the state of New York. *Conger* v. *Weaver*, 20 N. York, 140. In that case DENIO, J., not regarding the rule with favor, with apparent reluctance considered that it was too firmly established in that state to be disturbed.

In *Mack* v. *Patchin*, 42 N. York, 167, SMITH, J., says :— " But this rule has not been very satisfactory to the courts in this country, and it has been relaxed or modified more or

less, to meet the injustice done to lessees in particular cases." In *Pumpelly* v. *Phelps*, 40 N. York, 59, it is declared that the rule should not be extended, but limited strictly to those cases coming wholly and exactly within it. In both those cases the circumstances are enumerated which will take cases out of the operation of the rule. They are so numerous as to well nigh abrogate the rule itself.

In England the rule has been repudiated and such actions are placed upon the same footing with other actions on contracts. *Williams* v. *Burrell*, 1 M. G. & Scott, 402; *Locke* v. *Furze*, 19 Com. Bench, N. S., 96. In this state the rule has not been adopted, and we are not disposed to adopt it. We think it better to discard the rule, so as to be in a position to determine all such cases upon the general principles applicable to other contracts. In that way we think we shall be the better prepared to do justice in each case as it arises.

We suppose the correct rule to be that the plaintiff is entitled to recover the rent paid, and the difference between the rent agreed to be paid and the value of the term, together with such special damages as the circumstances may show him to be entitled to. *Trull* v. *Granger*, 8 N. York, 115.

The theory upon which the court below assessed damages being inconsistent with these principles, the judgment must be reversed and a new trial ordered.

In this opinion the other judges concurred.