### In re MULLINGS CLOTHING CO.

#### (District Court, D. Connecticut. July 13, 1918.)

#### No. 3613.

1. BANKRUPTCY ⬤228—FINDING OF REFEREE—REVIEW.
    A question of fact, when found by the referee in bankruptcy, will not be disturbed by the courts on petition for review.

2. LANDLORD AND TENANT ⬤101½—INSOLVENCY OF LESSEE—EFFECT.
    A lease contract did not cease to be a subsisting obligation by reason of the insolvency of the lessee and the appointment of a receiver for it, and, had the lessor not re-entered, but allowed the premises to stand vacant, he could have recovered all of the rent as it accrued from the receiver.

3. BANKRUPTCY ⬤322—TENANT'S INSOLVENCY—MEASURE OF DAMAGES.
    Where lessee company became insolvent, had receiver appointed for it, and went into bankruptcy, lessor's measure of damages, provable by him in bankruptcy proceedings, is loss of bargain, difference between rent agreed upon in original lease and actual rent received from receiver and new tenant for balance of term.

In Bankruptcy. In the matter of the Mullings Clothing Company, bankrupt. On petition for review of an order of the referee. Order modified.

See, also, 151 C. C. A. 134, 238 Fed. 58, L. R. A. 1918A, 539.

Bronson, Lewis & Hart, of Waterbury, Conn., for claimant.
Carmody, Monagan & Larkin, of Waterbury, Conn., for trustee.

THOMAS, District Judge. This is a petition for review, filed by George G. Mullings, administrator upon the estate of his father, John B. Mullings, late of Waterbury, deceased.

The order of the referee appealed from reads as follows:

"Ordered: First. That the administrator of said estate be and is hereby allowed to prove claim against the estate of the Mullings Clothing Company in the sum of $7,500.

"Second. It is found that the rental value of the property returned to J. B. Mullings in October, 1914, was at that time, and for the period of five years from the date of renewal, $10,500 a year."

The petitioner claims that this order is erroneous, in that the amount of the claim which he should have been allowed to prove against the bankrupt should have been fixed in the amount of $15,000, instead of $7,500.

Litigation heretofore had has already determined that the petitioner has a provable claim. The question to be decided now is what amount shall be allowed as a claim against the bankrupt estate.

The petitioner maintains that in accordance with the terms of the lease, the clothing company agreed to pay him $12,000 a year. After the breach of contract and surrender of the premises, the petitioner's intestate, after using reasonable diligence in securing a new tenant, finally relet the same to one Federman for $9,000 for five years, and the difference, to wit, $3,000 a year for five years, or $15,000, he claims is the amount which the referee should have allowed as damages for the breach of contract of lease.

This case has heretofore been before this court, and its decision is reported in 230 Fed. 681. From that decision an appeal was taken to the United States Circuit Court of Appeals, and its decision reversing this court is reported in 238 Fed. 58, 151 C. C. A. 134, L. R. A. 1918A, 539. In accordance with the mandate of the Circuit Court of Appeals the following order was passed:

"Ordered: That the matter of petitions of John B. Mullings for allowance of claim as on file be referred to Hon. Carleton E. Hoadley, referee in bankruptcy, and the said referee will reinstate said petitions and proceed with the questions as to liquidating said claim of said John B. Mullings all in accordance with the opinion of the Circuit Court of Appeals for the Second Circuit."

All of the facts in the case are fully stated in the opinions of the District Court and the Circuit Court of Appeals, supra. So far as necessary for an understanding of the questions involved in this petition, the facts are as follows:

John B. Mullings, now deceased, was the owner of a building in the city of Waterbury. On the 25th day of July, 1913, Mr. Mullings entered into a contract of lease with the Mullings Clothing Company, by the terms of which the latter leased a portion of the building for a term of five years from the 1st day of October, 1914, for an annual rental of $12,000, payable in monthly payments of $1,000 each. At the time of the execution of this lease the bankrupt was in possession of the premises under a prior lease which was to expire on October 1, 1914, for which a rental of $800 a month was agreed to be paid.

On the 19th day of August, 1914, the directors of the bankrupt company voted to wind up its affairs, and two days later all of the stockholders of the company petitioned the superior court in Connecticut to appoint a receiver, as authorized under the statutes of the state, and prayed for the dissolution and winding up of the affairs of the corporation, and such receiver was appointed.

The receiver, acting under instructions of the court which appointed him, repudiated the lease which was to begin October 1, 1914. The receiver turned over possession of the premises to the petitioner's intestate, who entered and took possession. After diligent efforts made by Mr. Mullings, the owner, a new tenant was found for the premises, and Mr. Mullings executed a lease to him on the 28th day of January, 1915. This lease was to begin March 1, 1915, and was to run for a term of five years at an annual rental of $9,000; the rental thus obtained being $3,000 a year less than that which the bankrupt agreed to pay in the repudiated lease.

The petitioner's intestate received $800 from the receiver of the state court for rental for October, 1914. J. H. James, to whom the receiver sold the stock and fixtures of the corporation, in accordance with an order of the state court, took possession of and occupied the store and paid $800 for the use of the same for the month of November, 1914.

The referee, after hearings had, found that $10,500 was a fair annual rental value of the premises from October 1, 1914, to October 1, 1919.

[1] The application of the proper rule of damages to the above facts will determine the amount of the claim. So that this review raises, not a question of fact, which, when found by the referee, will not be disturbed by the courts, but a question of law.

The trustee contends that the rule of damages is the difference between the stipulated rental and the rental value.

The petitioner contends that the rule of damages is the difference between the stipulated rental and the rental secured in the reletting.

[2, 3] The contract did not cease to be a subsisting obligation by reason of the insolvency and the appointment of a receiver. Had Mr. Mullings not re-entered, but allowed the demised premises to remain vacant, he could have recovered all of the rent as it accrued. But, instead of doing that, he availed himself of the right he had under the agreement to rent the premises to a new tenant, and by so doing he acted in the interest of the bankrupt, by diminishing its contract of indebtedness to him. His agreement having expressly conferred upon him the right he exercised, there is nothing left to construction. Acting within the scope of his authority, and after exhausting every effort at his command, he relet the premises, thereby mitigating the indebtedness of the former tenant. He now asks to be allowed to prove his claim in the amount which he has suffered by the dissolution of the corporation and the consequent termination of the contract of lease.

"Where a lessee repudiates or abandons his lease, the measure of the lessor's damages for the breach of contract is the difference between the rent stipulated in the lease and the sum for which the premises are rented to other parties for the remainder of the term; and where, through no fault of the lessor, the premises remain vacant during the remainder of the term, the lessor is entitled to recover as damages, the amount of the rent reserved for the unexpired portion of the lease." 24 Cyc. 923.

In Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332, where a corporation entered into a lease with the appellants, and thereby agreed to pay

them a stipulated annual rental in monthly installments for the use of premises therein described for a term of ten years, and before the expiration of the term the corporation was dissolved by statutory proceedings and a receiver appointed, who declined to accept the benefits and burdens of the lease and abandoned possession of the premises, it was held that by the dissolution the corporation was disabled from further performing the obligations of the lease on its part, and the breach of its contract to pay rent for the unexpired term of the lease became total and final, and thereupon a cause of action immediately accrued to the appellants for the recovery of all damages, present and prospective, which they sustained by the loss of their contract, and were allowed to prove their claim for such damages and share ratably in the distribution of the estate of the corporation.

Therefore the measure of damages is the loss of the bargain—the difference between the rent agreed upon in the original lease and the actual rent received for the balance of the term.

As the record shows that the state receiver paid $800 rental for the month of October, 1914, and James, who purchased the stock of merchandise, also paid $800 for the month of November, 1914, and that the premises then remained vacant for three months and until March 1, 1915, when the Federman lease took effect, the damages for the first year were $5,150, and for the succeeding four years the damages were $12,000—or a total of $17,150. But, as the petitioner is contending that the second rule applies here, asks that he be allowed to file his claim for only $15,000, the court will therefore assume that such is the correct amount, although, if the record as above stated is correct regarding the rental received, the amount of the provable claim would necessarily be, under the application of the second rule, the sum of $17,150.

It has generally been held in such circumstances as are here presented by this record that it is the owner's duty to use reasonable diligence to obtain another tenant at the best rental possible under all the circumstances of the case, and in this manner to reduce, as far as possible, the damages which the owner would be entitled to recover, and if, after using due diligence to obtain a tenant, and in the absence of bad faith or fraud in the reletting (and this record negatives such a claim) the owner or lessor leases the premises for the same term for a lesser amount than the rental stipulated in the broken lease, he is entitled to recover as damages the difference between the amount of the rental stipulated and the rental secured in the contract of reletting.

The facts in People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129, were strangely similar to the facts in the case at bar. There the lessor presented a claim to the receiver for the difference between the amount of rental reserved under the original lease ($12,000) and the amount reserved in the subletting, which was $9,000. There the claim was rejected by the receiver, and that action the Court of Appeals held was error, and declared that the lessor's claim "was definite and without any element of contingency."

In that case the Court of Appeals of New York, after discussing the difference between the situation of a receiver of a corporation and an assignee for the benefit of creditors, says (151 N. Y. on page 597, 45 N. E. 1130):

"What the lessor, Mills, did in this case, was to present as his claim against the estate in the hands of the receiver an indebtedness which was definite and without any element of contingency. Instead of claiming from the receiver the payment of all the rent which was to accrue during the unexpired term of the lease, Mills only claimed as an indebtedness the precise loss resulting from what he had been able to relet the premises for during the unexpired term. There was no question of a contingent liability, only to be ascertained to be such by the occurrence of future events. There was simply the presentation of a claim for a definite sum, as the loss which the lessor had suffered by the dissolution of the corporation, and the consequent termination of the subsisting engagement between it and its lessor."

The rule applicable here is found stated in Cyc. vol. 24, at page 923, supra.

In Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, the Supreme Court held that where a contract is renounced before the performance is due, and the renunciation goes to the whole contract and is absolute and unequivocal, the injured party may treat the breach as complete and bring his action at once.

I am unable to find any case, nor do counsel for the trustee refer to any in their brief, which supports the rule contended for. The whole discussion urged by the trustee is taken up with the proposition of whether the referee's finding that $10,500 was a fair rental value was based upon the evidence. In other words, whether the referee's finding of fact was supported by the evidence. And if the only question here presented was whether the referee had correctly found the facts as claimed by the trustee, this court would not, as previously indicated, disturb such finding of fact. But such is not the case here.

A careful study of the cases convinces me that the rule of damages here applicable is the one urged by the petitioner, so that the rental value for the term is immaterial to the present inquiry.

But counsel for the trustee cite and rely upon Cohn v. Norton, 57 Conn. 480, 18 Atl. 595, 5 L. R. A. 572, and Bernhard et al. v. Curtis, 75 Conn. 481, 54 Atl. 213, to sustain the contention that the rule here applicable is the difference between the rental value for the term and the amount stipulated in the broken lease. A careful examination of the reasoning in those cases discloses that the conclusion here reached is not in violation of the doctrine laid down in Cohn v. Norton and Bernhard v. Curtis.

Both cases are reasoned out upon the fundamental doctrine expounded in Hadley v. Baxendale, 9 Exch. 341, 354, where it was held that the damages recoverable for breach of contract are—

"such as may fairly and reasonably be considered either arising naturally; i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it."

The Hadley v. Baxendale rule has been generally adopted by the courts of this country, and the observation made by the courts respecting this rule is well expressed by *Judge Carpenter in Cohn v. Norton, supra*, where he said:

"This rule has been criticized somewhat as not being sufficiently definite; but we apprehend that any difficulty of that sort has necessarily arisen from the difficulty in applying the rule in given cases. It is not an easy matter in many cases to determine whether a given result is the natural consequence of a breach of a contract, or whether it arose from a matter which may reasonably be supposed to have been contemplated when the parties entered into the contract. Oftentimes it is a question on which men's minds may well differ."

Applying the reasoning in the two Connecticut cases relied upon by the trustee to the instant case, the rental value of $10,500 would be material in case no reletting had been made, and in that case the petitioner could then prove his claim upon the theory which the trustee now urges. But the reletting to Federman at $9,000 (in the absence of bad faith or fraud, and none whatever is shown) fixes definitely the actual value as the basis upon which the rule is to be computed.

In view of the conclusion reached, the order of the referee is modified, to the extent that the petitioner shall be allowed to prove his claim as a general claim, and that he be allowed as a general creditor to share pro rata with other general creditors in the dividend to be paid from the estate in the sum of $15,000, as prayed for by the petitioner.

Ordered accordingly.