### GEORGE GOLDBLATT ET AL. v. JOSEPH W. FERRIGNO, JR.

SUPERIOR COURT      HARTFORD· COUNTY      FILE NO. 82891

Memorandum filed May 22, 1950.

Apter & Nahum, of Hartford, for the Plaintiffs.

Sudarsky & Sudarsky, of Hartford, for the Defendant.

ALCORN, J. The plaintiffs seek damages for breach of contract to build a concrete foundation and the defendant counterclaims for damages for loss of profits because he was prevented from completing the contract.

The established facts are as follows: The plaintiff Anna Goldblatt owned a two-family frame house and lot, which she had purchased in May, 1947, for $10,700. She and her husband, the plaintiff George Goldblatt, conceived the idea of raising and moving the house to the rear of the lot and building a one-story structure under and in front of it to be used for stores. Plans were secured from an architect and a general contract for the work was entered into by George Goldblatt, who is hereinafter referred to as the plaintiff because throughout the events recited he acted as, and was dealt with as, the owner and sole interested party.

The original contractor raised and moved the house to the rear of the lot ready to receive the new construction and dug a foundation hole. A dispute arose over his contract price as a result of which his contract was terminated by mutual consent about November, 1947. The cellar hole thereafter stood neglected, collecting water, until March, 1948, when the plaintiff decided to resume the building program by letting contracts for the several parts of the work.

The plaintiff was a furniture salesman with no building experience so he engaged one Pandolph to supervise the work. Pandolph was a painter and decorator with no demonstrated building experience, but he undertook to be the plaintiff's "right hand" to see that the work was properly done. During the events in issue here he was constantly, but ineffectually, on the job.

He suggested the defendant as a competent foundation contractor, and on March 23, 1948, the plaintiff entered into a written contract with the defendant to install a concrete foundation for $4275. The contract price was payable $2000 when the foundation was installed and the forms removed, $1300 when the exterior walls were waterproofed, and $975 when the floor was completed.

In the meantime, the city building department had been protesting to plaintiff's wife about the hazard to the abutting sidewalk and property from earth slides in the excavation. Consequently, the plaintiff urged speed in having the foundation installed. The defendant began the work a few days after the contract was signed, worked overtime hours, and built the walls in sections to meet the more critical elements of the situation in the order of their importance.

The plaintiff had employed a surveyor to fix the lines of the walls and the defendant asked Pandolph for the points for these lines preparatory to building his forms. Pandolph talked with the surveyor over the phone relative to the north line of the building, relayed this information to the defendant, and pointed out to him the points for fixing the other lines. The defendant built his forms on these lines and poured the concrete for footings and walls. Neither he nor the plaintiff took the precaution to have the surveyor approve the lines before the forms and walls were in place.

The forms were removed from the walls on April 18, 1948, and a crack was noticed in the northerly portion of the east wall. The walls appeared otherwise proper and satisfactory, and on April 19, 1948, the defendant received the $2000 initial payment on the contract. About a week later, however, the city building department notified the parties that inspection showed the north wall to be 1.26 feet over the building line at its east end, and the south wall to be off center on its footing one foot, two and a half inches at its west end and six and a half inches at its east end. Because of these conditions instructions were issued that the walls could not be built on.

Conferences followed, participated in by representatives of the city, the architect, the plaintiff, and the defendant, resulting in a plan to remedy the conditions so that the foundation could be used for a building. This plan called for cutting the north wall down below the grade level where it encroached over the building line and constructing piers at certain points on the north and south walls to carry the load of the building on its eccentric line. The defendant thereupon began operations to make these corrections.

At the same time, the city authorities were concerned, because of the extremely poor soil conditions, over the danger to abutting property from lack of support. They notified both the plaintiff and the defendant that the walls should be backfilled to half their height immediately to safeguard this condition. No greater depth of backfill was recommended until a building had been placed on the walls because the walls, standing unaided, would not sustain the earth pressure if backfilled to grade. Both parties knew this.

The defendant's contract did not require him to do the backfilling. The plaintiff requested him to do it, however, and, after some negotiation, the plaintiff and defendant entered into a separate oral contract by which the defendant undertook to do the backfill for $150. Thereupon he proceeded to backfill the east and west walls to grade. The plaintiff, in his anxiety to get the work done, did some backfilling personally on the north wall.

Because of the pressure from the excessive backfilling, the east and west walls were found, on May 17, 1948, to have bulged and cracked. As a consequence, the city authorities condemned the foundation and forbade its use for any structure to be built.

The defendant, in the meantime, had waterproofed most of the exterior of the walls in accordance with his contract. He had not constructed the base of a chimney or a cellar stair because Pandolph instructed him to omit them. The city's condemnation of the work came before column footings and cellar floor, as called for by the contract, were begun.

Following the condemnation by the city authorities, the plaintiff paid $800 to have the foundation completely filled in and another $450 to have the house lowered in place for use. The south wall of the foundation built by the defendant has been

utilized as the front foundation wall of the house and the remainder of the foundation lies buried as a memorial to a badly executed piece of work for which the parties must share the responsibility.

. The fact that the contract sued upon was made by the husband, and that all significant acts in issue were his, while the land belonged to his wife, occasions no difficulty. If the established facts made out a breach of contract by the defendant, the plaintiff would be entitled to recover the damages that would arise naturally and generally from that breach, or such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract. *Cohn* v. *Norton*, 57 Conn. 480, 490. The measure would be such compensation as would leave the plaintiff as well off as he would have been had the contract been fully performed. *Raff Co.* v. *Murphy*, 110 Conn. 234, 242; *Lee* v. *Harris*, 85 Conn. 212, 214. In the case of a defaulting building contractor, the situation is normally that of recovering the reasonable cost of getting the work done by another. *Blakeslee* v. *Holt*, 42 Conn. 226, 229.

The plaintiff claims to recover the $2000 paid under the contract, $3000 for removing the foundation, $1500 for the expense of sheet-piling the excavation as required by the city before the walls could be removed, $450 for lowering the dwelling, $800 for filling the foundation hole to bury the walls, and $73 paid for plans to correct the defective courses of the north and south walls. The statement of these items in juxtaposition to the rule of damages, demonstrates their impropriety. The plaintiff has not proved a basis for recovering what he would have had if the contract had been fully performed, namely, a usable foundation. He has not proved the reasonable cost of getting the necessary correcting work done to give him a usable foundation. Instead, he seeks to recover nearly two-thirds of the cost of his wife's entire property, leaving them with the property as it originally existed but for the changed location of the house and the buried foundation, and appropriating the benefit of the use of the south wall of the latter as part of the new foundation of the house. The only item which might be material under the proper rule of damages is the $73 for corrective plans, but this cannot be considered because an inseparable and undisclosed part of it was made necessary by the participation of his own representative, Pandolph, in fixing the line of the north wall.

The defendant's counterclaim, on the other hand, is premised upon a claim that the contract was substantially performed, its completion was prevented by the plaintiff, and labor and equipment were furnished the plaintiff at his request to do the backfilling himself. This last proposition is answered by the facts already recited.

The defendant, if he had substantially performed his contract but unintentionally failed of strict performance in minor details, would be entitled to recover the contract price less the payment made and such sum as it would cost to make the work comply with the contract. *Satta* v. *Buono,* 127 Conn. 75, 78; *Daly & Sons* v. *New Haven Hotel Co.,* 91 Conn. 280, 288; *Pinches* v. *Swedish Lutheran Church,* 55 Conn. 183, 187. If he had not substantially performed and there had been an inexcusable breach, he might still recover in quasi contract for the value of his work less the damage caused by his default, in order to prevent unjust enrichment to the other party. In the case of work done on land the benefit of which cannot be returned, a recovery can be allowed only where an actual acceptance of the work prior to its abandonment is shown. No promise to pay for the work is to be implied in such a case from mere inaction by the party to be charged. *Kelley* v. *Hance,* 108 Conn. 186, 189.

Testing the counterclaim by these principles, it is clear from the facts proved that the defendant did not substantially perform his contract. *Commercial Discount Co.* v. *Plainfield,* 120 Conn. 274. While he cannot be solely charged with the encroachment of the north wall because of Pandolph's part in fixing that line, there is no legitimate excuse for the improper alignment of the south wall on its footing. The plaintiff did not establish that this misalignment was a violation of the city building code as alleged, but, in spite of that, the construction was faulty in not providing a properly aligned weight-bearing surface for the building. Beside this, the east wall showed a crack upon removal of the forms and prior to backfilling. When the initial contract payment was made, therefore, the defendant's performance to that point was defective. That payment was not, and was not intended to be, full compensation for the work to that stage, and it cannot be considered an express acceptance of the work by the plaintiff, both for that reason and because of the corrections which the parties conceded were necessary and which the plaintiff undertook to perform. Thereafter, the defendant's inability to complete the correcting work and the rest of the work on the contract was due to his own fault in

placing excessive backfill behind the walls contrary to the warn-ings as to the probable results from the city inspectors. This work, as already indicated, was done under a separate verbal contract and with the plaintiffs' full knowledge and consent. It was because of its effect on the walls that the foundation was condemned. The defendant's claim that at this point the walls might still have been salvaged by pushing them back in place and bracing at a cost of from $500 to $1000 is not impressive. It is based upon the opinion of an engineer unsupported by any con-vincing knowledge or observation of conditions at the time.

It is the misfortune of the parties that each must sustain loss from their joint mismanagement of what should have been a routine operation.

Enter judgment for the defendant on the complaint and for the plaintiffs on the counterclaim.