- Ellsworth, J.
The motion in arrest raises two questions of *171 law which have been elaborately argued before us; 1st, does the declaration, on the facts set forth in it, contain a good cause of action ; and 2d, if it does, ought the action to be, in form,.trespass or trespass on the case. Other' less important questions have been made in the case which will receive attention in their place.
The declaration contains two counts, which are essentially the same. They state that the plaintiffs, a manufacturing ^company in the town of Bristol, liable to be taxed [ *209 ] for their property, were put into the assessment list of the town for 1852, at the sum of $41,200, which, at three per cent., (the rate prescribed by law,) made their list and abstract $1,286 ; which list and abstract, after being duly completed and signed by the assessors, was by them returned to and lodged with the clerk of said town, in conformity with and for the purposes specified in the statute for the assessment and collection of taxes —that shortly afterwards, the defendant, intending to have the plaintiffs defrauded, and for the purpose of compelling them to pay a larger sum than by the assessment they would be required to do, maliciously, falsely and fraudulently, and without color of right, altered said fist and abstract from $1,236 to $1,735, increasing the plaintiff’s"tax $39.92—that on this altered list, at a subsequent term, a town tax was laid of eight cents on the dollar —that a warrant was issued for its collection, and placed in the hands of a collector, who after demand and refusal, levied upon the plaintiffs’ property, which however was soon released, by. the plaintiffs paying, under protest, said excess of $39.92. It further appears from the declaration, that said list and abstract were not returned to and lodged with the clerk of said town, until the 24th day of February, 1853.
A majority of us are fully satisfied that there is here a good cause of action—good after verdict certainly, and, we believe, good on demurrer.
The legislature have provided, by the act just referred to, a mode for ascertaining the burthen or proportion every man is to be obliged to bear' by way of public tax. The annual list and abstract is to be lodged with the town clerk by the 15th day of December, that every one may learn at what his estate is assessed,- and how his list compares with the lists of others, and that he may appeal to the board of relief, if he has any desire to do so. Every person whose name is in the list, and liable to be taxed, has therefore a direct and important interest in the list as returned, and that it remain *inviolate [ *210 jj and unaltered, except by the board of relief. It gives the only rule and measure of his taxes, and if it be *172 increased by a stranger or by any one of the assessors after it is returned, it is manifestly a private wrong to the property owner, if not indeed a misdemeanor under the fifty-seventh section of the act with regard to crimes, where it is made a criminal offense to impair, alter or destroy any \\;rit, process, return or other proceeding, in the office of the clerk of a county, town, city, borough or other incorporated society or community. The 118th section of the same statute bears strongly upon the same point.
Is it possible, now, that persons liable to be taxed, and who in fact are taxed, according to this perfected list, have not an important interest in its correctness and inviolability, as much so as they can have in any instruments, writings or records ? If these muniments are any of them fraudulently altered, the act, I repeat, is a wrong in itself, and is most certainly actionable if the alteration is followed by personal injury. May a person with impunity go into the office of the depositary of public records and alter and deface them at his pleasure ? Certainly not. It is a criminal act; and if injurious to those who are interested in the record as it was first made, must render the wrong doer liable to pay adequate damages. I say it is a ivrong, because it is the violation of a right, which is the legal definition of a wrong ;—is per se actionable, for nominal damage certainly, and the statute of limitations commences running from the doing of this illegal act. .If, in addition, the act be followed with actual damages, which are natural and proximate as consequences, they must be made good by the wrong doer, unless we are prepared to abandon the first principles of law and natural justice.
It can not be necessary in this case to go further than to make the defendant liable for the damages of which the plaintiffs complain, provided they be, as' I have said, the natural and proximate. consequences of the defendant’s act, as these undoubtedly are ; but, for myself, I can not doubt that here there has been a violation of right which is attended with some legal damage of course, and that this wrong gives a cause of action at once. In Pasley v. Freeman, 3 T. R., 51, the court decided [ *211 ] an analogous principle, broad enough *in its essential character to sustain this position. They held there that deceit accompanied with damage gives a clear cause of action ; and this is the English and American law at this day. Marshall, Ch. J., in Russell v. Clark's Exr., 7 Cranch, 92, says: “ Indeed, if an act in itself immoral, in its consequences injurious to another, performed for the purpose of effecting that injury, be not cognizable and punishable by our laws, our system of. jurisprudence is more defective than has hitherto been sup *173 posed.” In Upton v. Vail, 6 Johns., 181, Kent, Ch. J., alluding to the ease of Pasley v. Freeman, says .'-“That case went not upon any new ground, hut upon the application of a principle of natural justice, long recognized in the law, that fraud or deceit acco.mpanied with damage is a good cause of action. This is as just and permanent a principle as any in our whole jurisprudence.” Ld. Ch. Baron Comyn, the greatest lawyer of his age, says: “ An action on the case for a deceit lies when a man does any deceit to the damage of another.” Comyn Dig., “ Action on case for deceit.” A. 1. In Baily v. Merrell, 3 Bulst., 95, Croke, J., says: “ Fraud without damage or damage without fraud gives no cause of action, but where the two concur, there an action lieth.” The doctrine of the case of Pasley v. Freeman is most elaborately examined in 2 Smith’s Leading Cases, 70, 71, where are to be found, in the text and the notes, the most important cases in the books which have a bearing on this subject. Judge Swift says, in his Digest, (vol. 1, p. 473,) “ A wrong or injury is defined to be a privation or infringement of right.” Judge Story, in Webb v. The Portland Manfg. Co., 3 Sumner, 196, says, after reviewing the cases : “ Upon the whole, without going further into an examination-of the authorities on this subject, my judgment is, that whenever there is a clear violation of a right, it is not necessary in an action of this sort to show actual damages; and if no other be proved, the plaintiff is entitled to a verdict for nominal damages.” In Scott v. Shepherd, 3 Wils., 412, Ld. Ch. J. DeGrey says, in giving the opinion of the court in the celebx-ated squib case : “ The throwing the squib by the defendant was an unlawful act at common law ; the squib had a natux-al *power and tendency to do mischief indiscriminately.” [ *212 J In the px-esent case, the loss and damage to which the plaintiffs have been subjected, wex-e the vex-y consequences contemplated and intended by the defendant, and not only intended, but they wex-e the natural, and, we had almost said, the unavoidable consequences.
We may as well consider here as any where, w-hat we are to understand by consequential damages; when are they so related to the cause to which they are ascx-ibed, as to be, in a legal view, truly ascribable to it, flowing from it, and px-oximate to it. Evex-y judge will agree, that all damages must be th'e result of the injury complained of, whether it consist in the withholding of a legal right or the breach of a duty legally owed to the plaintiff. If they necessarily result, such as the loss of the value of an article of property which is carried away or destroyed, or of a sum of money which is not paid to the plaintiff according to *174 the contract,' or the loss of time and the endurance of pain consequent upon' having one’s limb fractured, they are called general damages.and may be shown under the ad damnum or general allegation of damage, for the .defendant does not need notice of such consequences for his defense ; he knows that they rimst'exist of course, and that they are proximate, and will’be in evidence on the trial. But if certain injuries and losses do not necessarily result from tlie defendant’s wrongful act, but in fact follow it as a natural and proximate consequence, they.are called special, and must be specially alleged, that the defendant may have notice and be prepared to go into the inquiry. The liability of the defendant is the same in both cases, and for the same reason. As an illustration :—the loss of one’s business, the loss sustained by slanderous words not actionable per se, the loss of one’s place as a servant or agent, the loss of marriage and the like, are special losses and can not be proved unless specially alleged; but if they are alleged, and proved to be caused by the defendant’s wrong, they are natural enough and proximate enough to be included in the term consequential damages.. The question may be answered by another illustration. [ *218 ] In' all cases the litigant *parties must be confined to • the principal transaction . complained of and ' to its attendant circumstances and natural results. These results include all the damage to the plaintiff of which the injurious act of the defendant was the efficient cause, though in point of time such damage did not occur until sometime after the act done. Damages are often recovered down to the time of trial, and even after, if the jury are satisfied from the nature of the wrong proved upon the defendant', that the consequences are likely to follow in the natural course of things. The rule itself probably is more easy to be apprehended than in all cases to be applied; but it is a sound rule of law, and it can be correctly applied by the exercise of proper judgment and discrimination. Speculative and possible losses, such as specific profits in business, do not fall within the rule, for they are too contingent and remote. Many such losses are mentioned by way of illustration, in Sedgwick on Damages, page 68, and onward, to which work I will refer rather than spend more timé on this interesting point.
It was said on the argument, that the damage sustained by the plaintiffs w'as not the natural and proximate consequence of the defendant’s act, inasmuch as, before the collector levied on the property of the' plaintiffs, the defendant stated to the selectmen the facts in the.case, and did not himself thereafter positively direct the collector to proceed. But he took no steps to 'forbid him, and left in his hands uncanceled and unaltered the *175 false list and the magistrate’s warrant, with full knowledge what would be the consequence of his not interfering. And what particular facts he stated to the selectmen, to enlighten them upon the proper course to be taken under the circumstances, it does not appear. The jury found that he did not prove the facts set up in his notice, or he would have been found not guilty by them under the charge of the court. But, be this as it may, the plaintiffs were not present at that interview, and can not be affected by it, provided the injury of which they complain is the natural and proximate consequence of the defendant’s act, which we think we have already shown.
*We will next inquire whether the plaintiffs have, [ *214 ] in seeking redress, adopted the proper form of action. It is claimed that the action should have been trespass, if anything, and not case. Greenleaf, in the second volume of his Treatise on Evidence, section 224, lays down the rule thus : “ The distinction between the actions of trespass ui el armis and trespass on the case is clear, though sometimes refined and subtle. By the former, redress is sought for an injury accompanied with actual force. The criterion of trespass vi el armis is force directly applied, or vis próxima. If the proximate cause of the injury is but a continuation of the original force, or vis impressa, the effect is immediate, and the appropriate remedy is trespass vi et armis. But if the original force or vis impressa has ceased to act before the injury commenced, the effect is mediate, and the appropriate remedy is trespass on the case. Thus, if a log thrown over a fence were to fall on a person in the street, he might sue in trespass, but if, after it had fallen on the ground, it caused him to stumble and fall, the remedy could be only by trespass on the case. The intent of the wrong doer is not material to the form of the action ; neither is it generally important whether the original act was or was not legal.” Blackstone, in the third volume of his Commentaries, page 208, lays down the rule in -the same way and nearly in the same words. So did this court in Gates v. Miles, 3 Conn., 70, 71. But I need not further particularize, for the rule is the same in all the books, though its application is not always equally clear and certain. It was much discussed in Leame v. Bray, 3 East., 598, and more fully in Scott v. Shepherd, where the defendant threw a lighted squib into a market house, which, after passing from one to another, each repelling it in self-defense by giving it a new direction, struck the plaintiff and put out his eye. The court held, by a divided opinion, that trespass was the proper form of action and not case, because they held that the injury was done by a continuation of the first force, and so was immedi *176 ate, and was not remotely the consequence of that force; or, in other words, that the defendant directly threw the squib into the plaintiff’s eye, as it were, without any intervening [ *215 ] diversion. Lord Ch. J. De Grey in that case remarked that the criterion was, whether the plaintiff received an injury by force from the defendant; that if the injurious act of the defendant was the immediate result' of the force originally applied by the defendant, and the plaintiff was injured by it, it was the subject of an action of trespass vi et armis, by all the cases both ancient and modern. This remark of Lord Oh. J. De Grey was afterwards approved by Lord Ellenborough in Leame v. Bray, before referred to.
Now let us apply this doctrine to the case in hand. Did the alteration of the plaintiffs’ list, and the levy on their goods, result from the same identical force, uninterrupted and unspent ? Were the acts the same ? or even parts of the same transaction ? or were they not different and distinct, depending on other forces, if I may so express myself, and on the determination and acts of other persons—first this defendant, then the selectmen, and then the magistrate who issued the warrant? We think the latter. Suppose for a moment, the plaintiffs, not knowing of any thing wrong, had been called upon to pay and had paid their tax, including the excess, without a levy; would they not have had a cause of action against the defendant, though there was no trespass or force at all? We think they would ; and if so, it must have been in the present form of action, not in assumpsit, for the defendant had not and never had in his hands money belonging to the plaintiff's. Besides, as to any forcible act of the defendant to rest an action of trespass upon, there is no reason to believe that, when he altered the plaintiffs’ list, he anticipated any violent action towards them by any officer of the law. It is much more probable that he expected that the tax would be paid without objection.
And even if the defendant may be treated as a direct party to the levy, it by no means follows that the plaintiff's may not, at their option, go for the alteration of their list and the consequent damages, rather than for the trespass, or the levy.
Not that we would intimate that there is not any longer a clear distinction between the turn forms of .action, trespass and trespass on the case, or that in the former the force [ *216 ] may *always be waived and the latter brought for the damage. But we know there are numerous cases where an election between these remedies is given, and where the trespass may be waived; and perhaps this case, were the inquiry important, might be found to be one of them. In some of *177 these states the distinction itself, between trespass and case, no longer exists for any purpose; as in Maine and New York, where it is done away by statute; and to some extent in Connecticut, where we allow of both forms of action in the declaration, provided the cause of action is the same. But, passing over this consideration, there are cases where the plaintiff has his election to bring trespass or trover, (which is but an action on the case,) or assumpsit, where money has been received; in all which, cases there is a forcible trespass, but in the two last of which it is waived, and the right to recover is placed on an independent ground.
Professor Greenleaf, in the second volume of his Treatise on Evidence, section 226, uses this language: “In this last case Lord Denman, Ch. J., proceeded upon the general ground, that though the taking of the goods was a trespass, the owner was at liberty to waive it and bring case for the consequential injury arising from the unlawful detention. Indeed, it is difficult to discern any reason why the party may not in all cases waive his claim to vindictive damages and proceed in case for only those actually sustained, or why he may not as well waive his claim for a part of the injury, and go for the residue, as to forgive the whole.
In Blin v. Campbell, 14 Johns., 432, the plaintiff sued in case, and it appeared that the defendant, being a trooper, had wounded the plaintiff in the leg by negligently firing a pistol. The court held that if the injury was attributable to negligence, though it were immedia-t.e, the party injured had his election, either to treat the negligence of the defendant as the cause of action and declare in case, or to consider the act itself as the injury and to declare in trespass. The same is laid down in 1 Chitty on Pleading, 127, and the authorities there cited sustain the position. The same is decided in Rogers v. Imbleton, 5 Bos. & Pul., 117. Turner v. Hawkins, 1 Bos. & *Pul., 472, Moreton v. Hardern, 4 Barn. & Cress., [ *217 ] 223, M’Allister v. Hammond, 6 Cow., 342, and in Williams v. Holland, 10 Bing., 112. In the last case the judges declare that any cases, such as Leame v. Bray, supposed to be to the contrary, are not inconsistent with their views, or, if they are, are not good law. This class of cases distinctly decides, that the wrongful act of the defendant may be attributed to negligence, and the plaintiff may overlook the direct force. So in cases of seduction, the father or master may sue in trespass with a per quod, or in case for the loss of service. We will not pursue the subject further.
There was a great array of authorities on the argument, chiefly *178 from Massachusetts, to show that where force has been used under process which turns out to he void, the action should be trespass for the forcible act. But it should be remembered that in Massachusetts the assessors of taxes' are virtually the collectors of taxes, and if they proceed without authority, they are of course the immediate actors, and may he treated as trespassers; but here, the act of the defendant is a previous independent act, not necessarily leading to any forcible injury whatever, and it iriajfj it appears to me, be held to be a ground of action without contradicting the Massachúsetts cases, and especially if the gist of the action is the consequential damages. The case is no stronger certainly, and I think less strong, than those already cited, of direct injury to the person or property, by immediate force resulting from negligence and carelessness. Besides, does it appear from the evidence recited in this motion, that the defendant can certainly be made liable in an action of trespass ? He did not commit the trespass in fact, either alone or in company with others. He denies all participation in it and liability for it, though he can not deny that his wrongful act in altering the tax list has. led, and most naturally led, to the injury complained of. How far he would stand exculpated, were he sued by the selectmen for having involved them in a trespass, we have no occasion to decide, though the finding of the jury, under the charge of the court, would seem to leave him to be held the [ *218 ] sole and ^culpable cause of the injury. In some form of action, however pure his motives, he ought to be made liable, if any one is to be ; and we know of no more proper form of action to accomplish this than the one which has been adopted.
Nor is it universally true, that for forcible injury under a process -which proves to be void, trespass is the only form of action. In Goslin v. Wilcock, 2 Wils., 302, the court decided that case lies for sneing the plaintiff in an inferior court maliciously, and arresting him, when that court had no jurisdiction of the cause. Lord Camden said, page 307, “ YVe are all of opinion, that if you hold a man to bail in an inferior court, when you know it hath not jurisdiction and with malice, an action upon the case will lie.”
The remaining question is, whether the defendant can shield himself from paying damages, the'damages actually suffered, because he and his brother assessors- were tardy in returning the tax list to the town clerk’s office. It should' have been done by the 15th day of December, but it was not done until the 24th day of February following. The bare statement of the case seems to me to furnish the answer, without the necessity of say *179 ing more. But there is more. The legislature, long before the tax in question was laid, interposed and validated this list against this very objection, and no question-is made or can be made that the legislature had not full power to do this. But it is said that the act of the defendant was before the passing of the confirming act of the legislature, and therefore, whatever the returned list might be held to be after the confirmation, until then it was mere waste paper, lying on the town clerk’s table, which any one might deface, tear, or tamper with in any way with impunity. To a majority of us this excuse appears alike unsatisfactory and untenable. The delay to lodge the list with the clerk was the defendant’s own wrong. He had sworn that he would have it completed, signed and returned in season. He must be held to this, and his neglect can not be urged by him as a license to tamper with it, after it was returned, signed and complete, any more than if it had been returned by the 15th day of December. He may not add wrong to wrong, to ^shield himself from an act grossly improper, illegal [ *219 J and criminal; and more especially, as the list was the same thing essentially, and the alteration of it followed by the same consequences or injuries, as if there had been no delay in the return of it. If the default of the assessors does them no hurt, it ought certainly to do them no good. The delay neither caused nor aggravated the injury, and it would be a reproach to the law, if the defendant should be allowed to escape thereby from a just responsibility.
Nor is it proper to allow the defendant to set up in his defence the fact that the plaintiffs might have resisted the collection of the tax if they had been disposed, and, in not having done so, are to be regarded as having paid their money voluntarily, and so as having no right to complain. The assessors returned the list as a true and perfect one, and the plaintiffs had a right to regard it as being so, and in all respects conformable to law, and thereupon to pay their tax accordingly. As well might the slanderer, when sued by some servant for having falsely and maliciously caused him to be deprived of his employment, set up that the contract for service was technically defective. In Benton v. Pratt, 2 Wend., 385, the court refused to allow a similar' objection when urged by a tortious conspirator.
And besides this, a majority of the judges agree with the judge below, that the confirming act of 1855 takes away all objection to the list as being returned too late, and that there is no force in the objection to the retrospective character of the -act. For these reasons we do not advise a new trial.
*180 In this opinion Hinman and Sanford, Js., concurred. Storrs, C. J., dissented.*
Motion in arrest to be overruled.
New trial not to be granted.

 A dissenting opinion which the .Chief Justice proposes to write, will be inserted at the close of the volume if received in season for that purpose.—It.