PERCIVAL J. BERNHARD ET AL. *vs.* LEWIS F. CURTIS.

First Judicial District, Hartford, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action for breach of the lessor's contract to deliver possession of the leased premises to the lessee, the plaintiff may recover, as general damages, the difference between the stipulated rent and the value of the term, if the latter exceeds the former, plus any rent he may have paid in advance. Additional or special damages may also be recovered, if properly alleged in the complaint, provided the circumstances attending the making of the contract, and contemplated by the parties, were such as might reasonably and fairly be supposed to charge them with knowledge that a breach of the

Bernhard et al. *v.* Curtis.

contract would probably and naturally result in such loss or damage.

In the present case, which was a hearing in damages after a default, it appeared that the defendant leased to the plaintiffs, on the 9th of February, a store on Main Street in Bridgeport, for three years from April 1st following, in which they intended to establish and carry on a millinery business, and so informed the defendant. On February 26th the defendant wrote the plaintiffs that it was doubtful if he could give them possession of the store on April 1st, as one *H*, the tenant then occupying it, claimed to have the right to remain another year. Thereupon the plaintiffs hired a store on State Street, for which they were obliged to pay a year's rent, but which they used only until August, when they rented another Main Street store and expended a considerable sum in altering it and adapting to it the fixtures originally purchased for the defendant's store. *Held :—*

1. That losses resulting from reasonable expenses incurred by the plaintiffs between February 9th and 26th, preparatory to their occupation of the defendant's store on April 1st, were proper items of special damage, the amount of which they might recover.

2. That the plaintiffs were not entitled to recover the expenses incurred by them in procuring another equally available store, merely for the purpose of carrying out their original plan of establishing a millinery business in Bridgeport, since it could not be reasonably supposed that the defendant contemplated such expenses as probable results of a breach of his undertaking ; and, moreover, because such expenses or losses were not alleged in the complaint.

3. That losses arising from expenses incurred after February 26th, in preparations to occupy the defendant's store, were not recoverable, since the plaintiffs were then informed, in substance, that they could no longer rely on the defendant's promise to give them possession on the first day of April.

4. That if the defendant desired to raise the question whether a wrongful holding-over by his tenant *H*, would relieve him, the lessor, from liability, he should have given notice of and proved that defense upon the hearing in damages ; and that in the absence of a finding that *H's* possession after April 1st was wrongful, and with the burden of proof upon the defendant, *H's* possession must be regarded as lawful.

The fact that a tenant of the lessor is rightfully in possession under an oral lease from him, does not prevent another, to whom the premises are leased in writing, from recovering substantial damages of the lessor for his failure to put the latter into possession.

Argued January 6th—decided March 4th, 1903.

ACTION for damages for breach of contract to deliver

to plaintiffs possession of a certain store leased to them by the defendant, brought to the Superior Court for Litchfield County and heard in damages, after a default, to the court, *Ralph Wheeler, J.* Judgment for substantial damages, and appeal by defendant. *Error and case remanded.*

The complaint, dated May 10th, 1897, alleges in substance that on the 9th of February, 1897, the defendant leased to the plaintiffs a certain store on Main Street in Bridgeport, for the term of three years from the 1st of April, 1897, at the annual rent of $900, payable monthly in advance; that the plaintiffs on April 1st demanded possession, and went upon the premises to take possession "as provided in said lease," but that the defendant failed, refused and neglected to put the plaintiffs into possession, and has neglected to perform any of the terms of said lease.

Paragraphs 5 and 6, added by way of amendment in August, 1899, are as follows: —

" The plaintiffs leased said store for the purposes of establishing and conducting a large millinery business therein, and so notified the defendant at the time of signing said lease; and the plaintiffs had on hand at the time of signing said lease a large stock of millinery goods . . . of the value of $15,000, to be used in said business, and by reason thereof notified the defendant that unless they obtained possession of said premises, as provided in said lease, they would suffer a large monetary loss.

" The plaintiffs, confiding in the covenants of said lease, after the signing thereof, also purchased and manufactured a further stock of millinery goods, and shipped them and a portion of the stock previously on hand and reserved to be used in said business, to Bridgeport, Conn., and made contracts with various persons to manage and conduct said millinery business; and, by reason of the defendant's failure to fulfil the terms of said lease, the plaintiffs were obliged to expend large sums of money in hiring and fitting up two other stores in which to dispose of said stock, and to fulfil said contracts, and by reason of the defendant's said failure to fulfil said lease said stock of millinery goods . . . became

Bernhard et al. v. Curtis.

of little or no value to the plaintiffs, and they were obliged to dispose of them at a great loss or sacrifice."

Damages were demanded to the amount of $10,000. A copy of the lease was attached to the complaint.

It was agreed by the parties that the case should be heard in damages, after a default, upon the evidence taken at a former trial, to which objections might be made during the reading of the evidence and upon the argument of the case, to be ruled upon by the court in its memorandum of decision. No notice was filed by defendant under General Statutes, Rev. 1902, § 742.

It appears that the plaintiffs were engaged in importing and selling, at wholesale, millinery goods in New York City. In the winter of 1896–1897 they purchased in Europe, for the firm, goods to the value of $2,500, and before April 1st, 1897, purchased other goods in New York of the value of $2,000, all of which they reserved from their wholesale stock in New York for the purpose of opening a retail millinery store in Bridgeport.

On February 9th, 1897, the plaintiffs, after certain negotiations with the defendant in which they informed him that they intended to establish a large and up-to-date millinery business in Bridgeport and had made certain purchases of goods in Europe therefor, entered into a written lease with the defendant for a store on Main Street in Bridgeport for the term of three years from the 1st day of April, 1897, at the rent stated in the complaint. The plaintiffs did not state to defendant that they intended to purchase or manufacture goods before entering into possession of defendant's store. At the time of the execution of this lease, and until the following August, the defendant's store was the only available one in that section on Main Street.

Immediately upon the execution of the lease the plaintiffs made a verbal agreement with one Mary E. Hogan, that she should manage their business for one year from March 1st at $30 a week, and on March 1st signed a written contract with her containing those terms. On the 22d of February the plaintiffs had measurements made of defendant's store,

and thereafter ordered fixtures and furnishings therefor at a cost of $827.24, which were made after the 26th of February.

Subsequent to February 26th the plaintiffs hired a store on State Street in Bridgeport, for the month of March, in which to store, manufacture and arrange stock for the opening of the Main Street store on April 1st, and to this store, before April 1st, shipped goods of the value of $3,370.97, reserved for the Bridgeport store, and afterwards, in the months of April, May and June, shipped to this store goods of the value of $1,120.56, and also expended before April 1st a large sum of money in the manufacture of hats and in preliminary work at the State Street store, and in New York, for the Bridgeport business.

At the time the lease was executed, one Harris was in possession of the defendant's store, having taken a written lease thereof from the defendant for one year from April 1st, 1896. On February 22d the plaintiffs were informed that Harris claimed to have a further verbal lease until February 1st, 1898, and that he did not intend to vacate the store until that date. The plaintiffs thereupon, on the 25th of February, saw the defendant, who informed them that Harris had no verbal lease; that he, the defendant, would institute a summary process proceeding to dispossess Harris ; that "under such proceeding a tenant holding over could legally be dispossessed in six days, but that it was sometimes attended with some difficulty." On February 26th defendant's counsel wrote the plaintiffs that the defendant had seen Harris ; that the latter said he intended to stay, and that while the defendant would do what he could to get possession, the plaintiffs must take note of the situation. The defendant afterwards commenced an action of summary process against Harris, which was not carried to a successful issue, and Harris remained in possession until the following August.

The plaintiffs tendered to the defendant the rent on the 1st of April and of May, and demanded possession. The plaintiffs further leased the State Street store for the month of April for $50, and on the 8th of May leased that store and

paid the rent for the same for one year from March 1st, being unable to obtain a lease of it for one month.

The plaintiffs opened their millinery business in the State Street store on or about April 1st, and continued business there until August 1st, 1897, and used there the fittings and furnishings ordered for the defendant's store. In July the plaintiffs leased a store on Main Street from the 1st day of August, 1897, for one year, at a rent of $1,050, called the Coughlin store, and transferred to that store the fixtures and furnishings used at the State Street store, and were put to the further expense of $800 in altering and fitting that store for the millinery business. Mary E. Hogan continued in the employ of the plaintiffs in their business in the State Street and Coughlin stores, upon the terms of plaintiffs' said contract with her. Other material facts are stated in the opinion.

*Curtis Thompson* and *Arthur D. Warner*, for the appellant (defendant).

*Jeremiah D. Toomey, Jr.*, for the appellees (plaintiffs).

HALL, J. Although the complaint does not expressly allege that the defendant agreed to deliver possession of the leased premises on the 1st of April, it describes a cause of action sufficient, in the absence of a demurrer, to sustain a judgment for substantial damages. It in effect alleges that in violation of the terms of the lease, made a part of the complaint, the defendant refused to put the plaintiffs in possession of the store. After the default it was only necessary for the plaintiffs to prove the averments of the complaint as to the extent of their damage. The burden rested upon the defendant to prove any fact which would show that he was free from any liability. If he desired upon the hearing in damages to raise the question of whether a wrongful holding-over by Harris would relieve the lessor from liability, he should have given notice of that defense, as required by General Statutes, Rev. 1902, § 742, and should have proved

it. In the absence of a finding that Harris' possession after April 1st was wrongful, and with the burden of proof thus upon the defendant, we must regard Harris' possession as lawful. The fact that he was rightfully in possession under a verbal lease from the defendant does not prevent the plaintiffs from recovering substantial damages. *Cohn* v. *Norton,* 57 Conn. 480, 490.

The correct rule of damages in actions of this character is stated in *Cohn* v. *Norton* (p. 495) to be that " the plaintiff is entitled to recover the rent paid, and the difference between the rent agreed to be paid and the value of the term, together with such special damages as the circumstances may show him to be entitled to ; " and, citing the leading case of *Hadley* v. *Baxendale,* 9 Exch. 341, it is said that as in ordinary cases of breaches of executory contracts, the essence of the rule is " that the defendant must, in some measure, have contemplated the injury for which damages are claimed. If it was the direct and natural result of the breach of the contract itself, he did contemplate it; but if the injury did not flow naturally from the breach, but the breach combined with special circumstances to produce it, then the defendant did not contemplate it . . . unless he had knowledge of the special circumstances ; " and that there may be cases in which, from the nature of the transaction and the character of the business in which the party is engaged, the defendant will be deemed in law to have contemplated the injury for which damages are claimed, although not expressly informed of the special circumstances which may have contributed to produce it.

In *Jordan, Marsh & Co.* v. *Patterson,* 67 Conn. 473, 480, in speaking of the special damages recoverable for breach of contract, it is said that, speaking generally, they must " be confined to such as result from the circumstances which may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract ; " and in *Lewis* v. *Hartford Dredging Co.,* 68 Conn. 221, 236, that special damages which the parties ought in reason to have foreseen, as the probable and direct result of

special circumstances which were or ought to have been known to the defendant, may be recovered.

The rule as thus stated accords with that laid down in *Hadley* v. *Baxendale*, 9 Exch. 341, 354, that the damages recoverable are "such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

It may be added that mere notice to a lessor of the facts from which special damages may arise upon a breach of his contract, does not necessarily render him liable for the special damages which afterwards result therefrom. To render him so liable, the knowledge of the lessor, or the facts surrounding the making of the lease, must be shown to have been such that it may be fairly inferred therefrom that he consented to assume the enlarged responsibility and risk of such special damages. 1 Sedgwick on Damages (8th Ed.), § 159; Wood's Mayne on Damages, § 41; Hale on Damages, p. 62; *Booth* v. *Spuyten Duyvil Rolling Mill Co.*, 60 N. Y. 487; *Snell* v. *Cottingham*, 72 Ill. 161.

Other rules of law applicable to the case at bar are: that the plaintiffs may recover the reasonable cost of steps necessarily taken in order to protect themselves from loss or to diminish the loss, from proper acts of preparation to occupy the defendant's store; 1 Sutherland on Damages, p. 148; that the plaintiffs assumed the risk of loss from all liabilities not incurred by them in good faith; *Cohn* v. *Norton*, 57 Conn. 480, 493; that all damages which they could have avoided by the use of due diligence are not to be regarded as the proximate results of the defendant's acts; *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 481; and that those injuries and losses, for which a recovery is sought, not necessarily resulting from the defendant's wrongful act, but following it as natural and proximate consequences, and termed special damages, must be specially alleged, so that the defendant may be apprised of the nature of the loss actually

sustained, and be prepared to go into the inquiry. *Bristol Mfg. Co.* v. *Gridley*, 28 Conn. 201, 211, 212; *Lewis* v. *Hartford Dredging Co.*, 68 id. 221, 236.

The items of damage allowed by the trial court in the present case, and which go to make up the judgment of $1,540, are the $800 paid by the plaintiffs for the alterations and fixtures for the Coughlin store, and the $400 paid for rent of the State Street store, after the plaintiffs ceased to occupy it. The defendant objected to proof of these items of damage, and afterwards claimed that they should not be allowed; and further claimed that there could be no recovery for loss by reason of expenses incurred after the plaintiffs were informed of the claims of Harris and of his refusal to vacate the defendant's store on the 1st of April.

From the fact that the judgment is based upon these two items, as well as from certain rulings and statements of the trial court, appearing upon the record, it would seem that damages were assessed upon the theory that the plaintiffs, independently of their right to recover for any loss they may have sustained by reason of preparations made to occupy the defendant's store, were entitled, upon the facts alleged and found, to a judgment for the loss growing out of the expense incurred by them in procuring another store equally suitable with the defendant's in which to conduct the millinery business.

As indicating such view of the case, the trial court says that the plaintiffs were required to "give up entirely their purpose of establishing a business in Bridgeport for the present, and immediately dispose of their stock of goods, and dispose of, or arrange to protect themselves in respect to, the fixtures on hand or ordered; or they might pursue such a course as they did, for the purpose of locating themselves on Main Street as soon as opportunity afforded. They chose the latter course. It was a proper and reasonable one, if they were determined to carry on business in Bridgeport in the future; . . . that the defendant must be held to have understood that damage would result if the plaintiffs could not use the fixtures (ordered for the defendant's store) in

the Curtis store, or, if in order to get an equally but no more desirable store on Main Street, they had to purchase additional fixtures or pay a bonus to get possession;" that "in the natural course of the events, in order to obtain the object of their lease, the use of a store on Main Street and as near the Curtis store as possible, the plaintiffs were driven almost necessarily to this expenditure," that is, of the $800 for additional fixtures for the Coughlin store; that "in July, the plaintiffs, finding the State Street store unsuitable for their business, and in pursuance of their original purpose of obtaining a store on Main Street" leased the Coughlin store; and again, that one of the steps taken to protect themselves from loss was "the hiring of the Coughlin store, which was in pursuance of their original purpose of establishing a business in that section of the city."

It is true that the trial court has found that the plaintiffs "were justified in ordering the fixtures (for defendant's store) and in some reasonable preparation for the opening of business in the Curtis store on the 1st day of April, by the purchase and reservation of stock, and in a small amount of manufacture" and that "their steps taken to protect themselves from loss growing out of reasonable preparations, . . . including the hiring, fitting and vacating the State Street store, and the hiring and fitting up of the Coughlin store, were reasonable and proper." But the record does not state that the plaintiffs were justified in sending the $3,371 worth of goods to the State Street store in March, after, as the court finds, the doubt arose as to the possession of the defendant's store, nor is it found what part, if any, of these goods were purchased or manufactured after the 9th of February, when the lease from the defendant was executed, nor does it clearly appear what loss, if any, the plaintiffs sustained by having purchased the fixtures for the defendant's store, nor, indeed, whether they were in fact purchased before the 26th of February. Evidently it is not meant by this part of the finding that the entire expense of hiring, fitting and using the State Street and Coughlin stores, was reasonable and proper in order to protect the plaintiffs against loss from prepara-

tions to occupy the defendant's store on April 1st, since but a part of such expense is allowed to the plaintiffs by the judgment, and since it clearly appears from other portions of the finding that these stores were rented and used by the plaintiffs largely, if not wholly, for a different purpose, namely, for carrying out their original design of conducting a retail millinery business in Bridgeport.

The plaintiffs are not entitled to recover expenses incurred by them in procuring another store, merely for the purpose of carrying out their original plan of opening a millinery business in Bridgeport. They cannot recover them as general damages, because by the promises of an ordinary lease the lessor does not undertake, upon failure to deliver possession, to furnish other premises equally well adapted to the lessee's use at an expense beyond the market value of the leased premises. The limit of the general damages which a lessee may recover, who is thus denied possession, is the actual rental value of the leased premises for the term, and not the amount which the lessee under special circumstances may have been compelled to pay to obtain similar premises. If such actual value of the term is no greater than the rent agreed to be paid, the general damages, in the absence of any payment of rent, are nominal; but if rent has been paid, then the amount of the rent so paid. If such actual value is greater than the rent agreed to be paid, the general damages are the difference between the agreed rent and such actual value, plus the amount of rent actually paid.

Nor can the plaintiffs recover, as special damages, the expense incurred in procuring another store merely for the purpose of establishing a business in Bridgeport. First, because, from the mere fact that when the lease was executed by the defendant he was informed that the plaintiffs intended to establish a millinery business in Bridgeport, and had made certain purchases of goods therefor, it cannot reasonably be supposed that the defendant contemplated as probable results of a breach of his contract, and as risks assumed by him, that the plaintiffs might sustain losses by renting, merely for the purpose of establishing such business in Bridgeport,

Bernhard et al. v. Curtis.

an unsuitable store on State Street, paying $400 rent therefor after they had ceased to occupy it, and hiring another store on Main Street requiring the expenditure of over $1,600 for fixtures, $800 worth of which would be valueless to the plaintiffs beyond rendering such store equally suitable with the defendant's for carrying on such millinery business. Second, because it is not alleged in the complaint that the plaintiffs suffered any loss or incurred any expense in procuring another store equally suitable with the defendant's in which to carry on their projected millinery business, or that they did procure such a store. In fact, such suitable store was not obtained until after the present suit was brought. The only special damages alleged in the complaint are those arising from expenses incurred by the plaintiffs in protecting themselves from loss from preparations made prior to April 1st to occupy the defendant's store, and from depreciation in the value of goods purchased or manufactured for the Bridgeport business before April 1st. If the plaintiffs did not in fact make any preparations for occupying the defendant's store, for the expense of which he can be held liable, they cannot, assuming the value of defendant's store to have been no greater than the rent agreed to be paid, under these allegations, recover for any expense incurred in procuring another store in which to conduct their business. By this we do not mean that the plaintiffs may not recover, under the allegations of the complaint, such part of the expense of carrying on the millinery business in Bridgeport as was necessarily incurred by them in protecting themselves from loss from proper expenses of preparation to occupy defendant's store. Assuming that the actual rental value of the defendant's store was no greater than the rent agreed to be paid, the real question then to be decided upon the hearing in damages was what loss, for which the defendant can be held liable, did the plaintiffs sustain by reason of their alleged preparations to occupy the defendant's store, and not what expense did they incur in order to procure another store equally as good.

Upon the record before us, the judgment rendered cannot

stand as a measure of the loss resulting from such preparations : first, because, as we have said, it seems to be based upon, or to include, a different loss than that resulting from such preparation; and, second, because it does not clearly appear that there were acts of preparation to occupy the defendant's store, and losses resulting therefrom which would render the defendant liable to the amount of the judgment rendered.

In his memorandum of decision the trial judge says that "the plaintiffs have been permitted to give in evidence every special circumstance from which they thought a claim for special damages might arise." While the finding states that the plaintiffs proved a depreciation in value of goods not sent to Bridgeport, and in goods manufactured in Bridgeport after the 1st of March, and that there was evidence tending to show a loss of 25 per cent on the $3,371 worth of goods sent to the State Street store, and that it may be assumed that the fixtures purchased for the defendant's store could have been sold for 60 per cent of their cost,—the judgment is not based on these losses. And while it is found that the hiring, fitting and vacating the State Street store, and the hiring and fitting up of the Coughlin store, were reasonable and proper steps to protect the plaintiffs from loss growing out of reasonable preparations, and that the plaintiffs acted in good faith in making preparations for their spring opening and in steps taken to facilitate the disposal of their goods and protect themselves from loss, it nowhere appears what the court regarded as reasonable acts of preparation—excepting perhaps the purchase of the fixtures for the defendant's store, the cost of which is not included in the judgment—nor just when the acts, which the court may have considered reasonable acts of preparation, were performed.

Again, certain of the expenses incurred and losses sustained, which are described in the finding, cannot properly be regarded as arising from acts of preparation to occupy the defendant's store, and for which the defendant can be held responsible.

The plaintiffs cannot recover for any loss sustained by

Bernhard et al. v. Curtis.

reason of expense incurred after February 26th in preparations to occupy the defendant's store. On that day they were fully informed as to the claims of Harris: that he refused to surrender possession on the 1st of April, and that their only chance of obtaining possession later depended upon the determination, by an action of summary process, of the disputed question of whether Harris had a verbal lease. With these facts before them, they were notified in writing, by the defendant's counsel, that, while the defendant would do what he could to get possession, they must take note of the situation. The only fair interpretation of this language, under the circumstances then existing, is that the plaintiffs could no longer act in reliance upon the agreement that they should have possession on April 1st. In *Cohn* v. *Norton*, 57 Conn. 480, 493, it was said: "Again, if these liabilities were incurred after the plaintiff knew that it was doubtful whether he could have the store, . . . they were incurred in bad faith, and he assumed the entire risk." In that case, as in this, the plaintiff, after he had learned the facts, was informed that the defendant would do all he could to get possession.

It does not appear that the defendant made any such promise to deliver possession after April 1st as would have justified the plaintiffs in incurring, after February 26th, any liabilities at the defendant's risk, with the view of obtaining possession at such later date, nor is it alleged in the complaint that the defendant made any such promise, or that the plaintiffs suffered loss by reason of the breach of any such promise.

The plaintiffs should not be allowed for loss sustained by depreciation in value, upon all the goods which they had on hand before obtaining the lease from the defendant. The defendant was not a party to the purchase of such goods. It is not alleged that he knew of their purchase, nor is it found that he had any other information concerning them than that the plaintiffs had made certain purchases in Europe. There may, however, be allowed the loss, if any, caused by reserving or keeping, from February 9th to February 26th, for use in the defendant's store, or by shipping to Bridgeport,

Bernhard et al. *v.* Curtis.

for that purpose, between those dates, such portion of those goods as it may be shown the defendant, when he signed the lease, knew or should in reason have apprehended, would be so kept or shipped; as well as any loss which may have been sustained by the plaintiffs by the purchase or manufacture of such amount of goods, between those dates, for use in the defendant's store, as it may be shown the defendant, when he signed the lease, knew or should have apprehended would be so purchased or manufactured. And so, too, there may be an allowance for any other loss, alleged in the complaint, caused by any act done, or expense incurred, by the plaintiffs, between said dates, in making proper preparations to occupy the defendant's store, which loss, upon the facts, it may reasonably be supposed, the defendant, when he signed the lease, contemplated as the probable result of a breach of his contract.

If any part of the expense of renting, fitting up and using the State Street and Coughlin stores, after February 26th, or of conducting a millinery business in them, after that date, was necessarily incurred in protecting the plaintiffs against loss from the proper acts of preparation, between February 9th and February 26th, above described, the loss occasioned by such expense should be allowed; but in determining the loss sustained by the purchase of any fixtures for that purpose, the value of such fixtures left on hand should be deducted from the proper cost thereof, and no part of any expense incurred by the plaintiffs merely for the purpose of providing themselves with another store equally well adapted with the defendant's for the millinery business should be allowed.

As the damages do not appear to have been assessed in accordance with the rules above stated, the case is remanded for a reassessment of damages.

In this opinion the other judges concurred.